(Slip Opinion)          OCTOBER TERM, 2012          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HENDERSON *v*. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 11–9307.   Argued November 28, 2012—Decided February 20, 2013

A federal court of appeals normally will not correct a legal error made in a criminal trial unless the defendant first brought the error to the trial court's attention.  *United States* v. *Olano,* 507 U. S. 725, 731. But Federal Rule of Criminal Procedure 52(b) provides an exception, permitting "[a] plain error that affects substantial rights [to] be considered even though it was not brought to the [trial] court's attention."

Here, the District Court increased the length of petitioner Henderson's sentence so he could participate in a prison drug rehabilitation program.  Henderson's counsel did not object to the sentence, but, on appeal, Henderson claimed that the District Court plainly erred in increasing his sentence solely for rehabilitative purposes.  While the appeal was pending, this Court decided in *Tapia* v. *United States*, 563 U. S. ___, ___, that it is error for a court to "impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."  While this meant that the District Court's sentence was erroneous, the Fifth Circuit determined that Rule 52(b) did not give it authority to correct the error. In doing so, it concluded that an error is "plain" under the Rule only if it was clear under current law at the time of trial, but that, in this case, Circuit law was unsettled until *Tapia* was decided.

*Held*: Regardless of whether a legal question was settled or unsettled at the time of trial, an error is "plain" within the meaning of Rule 52(b) so long as the error was plain at the time of appellate review.  Pp. 3–13.

   (a) The question of whether an error must be plain at the time it is committed or at the time it is reviewed reflects two competing legal principles.  The principle that a right may be forfeited in a case if it is

not timely asserted before a tribunal having jurisdiction to determine it favors limiting the assessment of plainness to the time of the error's commission. See *Olano, supra,* at 731. And the rule that an appellate court must apply the law in effect at the time it renders its decision favors assessing plainness at the time of review. See *Thorpe* v. *Housing Authority of Durham,* 393 U. S. 268, 281. Because neither principle is absolute, the conflict cannot be decided by looking to one rather than the other. The text of Rule 52(b) also leaves open the temporal question. And relevant precedent does not directly answer the question. In *Olano,* this Court said that Rule 52(b) authorizes an appeals court to correct a forfeited error only if (1) there is an "error," (2) that is "plain," (3) that "affect[s] substantial rights," 507 U. S. 732, and (4) that "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,'" *id.*, at 736. In *Johnson* v. *United States,* 520 U. S. 461, 468, the Court concluded that, where a trial court's decision was clearly correct under circuit law when made but becomes "clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." However, neither case addressed what rule should apply where the law is unsettled at the time of the error but plain at the time of review. 507 U. S., at 734, 520 U. S, at 467−468. Pp. 3−6.

   (b) This precedent, when read in light of the underlying background principles, leads to the conclusion that Rule 52(b)'s "plain error" phrase applies at the time of review. If "plain error" covers trial court decisions that were plainly correct when made and those that were plainly incorrect when made, it should cover cases in the middle—*i.e.,* where the law was neither clearly correct nor incorrect, but unsettled, at the time of the trial court's decision. To hold to the contrary would lead to unjustifiably different treatment of similarly situated individuals, for there is no practical reason to treat a defendant more harshly simply because his circuit's law was unclear at the time of trial. Even if a "time of error" rule would provide an added incentive to counsel to call a trial judge's attention to the matter so the judge could quickly consider remedial action, such incentive has little, if any, practical importance since counsel normally has good reasons for calling a trial court's attention to potential error, *e.g.,* the advantage to counsel and client of having an error speedily corrected. In sum, in contrast to a "time of error" rule, a "time of review" interpretation furthers the basic principle that "an appellate court must apply the law in effect at the time it renders its decision," *Thorpe, supra,* at 281; works little, if any, practical harm upon the competing administrative principle that insists that counsel call a potential error to the trial court's attention; and is consistent with Rule 52(b)'s basic purpose of creating a fairness-based exception to the general

Syllabus

requirement that an objection be made at trial to preserve a claim of error. Pp. 6−9.

(c) The Government's arguments to the contrary are unpersuasive. Its claim that appellate courts should consider only errors that counsel called to the trial court's attention and errors that the court should have independently recognized overlooks the way in which Rule 52(b) restricts the appellate court's authority to correct an error to those errors that would, in fact, seriously affect the fairness, integrity, or public reputation of judicial proceedings. The Government also fears that the holding here will lead to too many "plain error" claims. But, a new rule of law set by an appellate court cannot automatically lead that court to consider all contrary determinations by trial courts plainly erroneous, given that lower court decisions that are questionable but not plainly wrong fall outside the Rule's scope, and given that any error must have affected the defendant's substantial rights and affected the fairness, integrity, or public reputation of judicial proceedings. Finally, the Government's textual argument that Rule 52(b) is written mostly in the past tense, whatever its merits, is foreclosed by *Johnson.* Pp. 10−12.

646 F. 3d 223, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–9307

ARMARCION D. HENDERSON, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[February 20, 2013]

JUSTICE BREYER delivered the opinion of the Court.

A federal court of appeals normally will not correct a legal error made in criminal trial court proceedings unless the defendant first brought the error to the trial court's attention. See *United States* v. *Olano*, 507 U. S. 725, 731 (1993). But Federal Rule of Criminal Procedure 52(b), creating an exception to the normal rule, says that "[a] *plain* error that affects substantial rights may be considered even though it was not brought to the [trial] court's attention." (Emphasis added.) The Rule does not say explicitly, however, as of just what time the error must be "plain." Must the lower court ruling be plainly erroneous as of the time the lower court made the error? Or can an error still count as "plain" if the erroneous nature of that ruling is not "plain" until the time of appellate review?

The case before us concerns a District Court's decision on a substantive legal question that was unsettled at the time the trial court acted, thus foreclosing the possibility that any error could have been "plain" *then*. Before the case was final and at the time of direct appellate review, however, the question had become settled in the defend-

ant's favor, making the trial court's error "plain"—but not until that later time.  In our view, as long as the error was plain as of that later time—the time of appellate review— the error is "plain" within the meaning of the Rule.  And the Court of Appeals "may . . . conside[r]" the error even though it was "not brought to the [trial] court's attention." Fed. Rule Crim. Proc. 52(b).

I

In early 2010, Armarcion Henderson, the petitioner, pleaded guilty in Federal District Court to a charge of being a felon in possession of a firearm.  646 F. 3d 223, 224 (CA5 2011).  The District Judge accepted the plea and, in June 2010, he sentenced Henderson to an above- Guidelines prison term of 60 months.  *Ibid.*  The judge entered the longer sentence to "try to help" Henderson by qualifying him for an in-prison drug rehabilitation pro- gram, a program that would provide "the treatment and the counse[l]ing that this defendant needs right now." App. to Pet. for Cert. 35a, 40a.

Henderson's counsel did not object.  Indeed, the judge asked counsel if there was "any reason why that sentence as stated should not be imposed." *Id.,* at 41a.  And counsel replied, "Procedurally, no." *Ibid.*  Subsequently, Hender- son appealed, claiming, among other things, that the District Court had "plain[ly]" erred in sentencing him to an above-Guidelines prison term solely for rehabilitative purposes.  646 F. 3d, at 224.

In 2011, after Henderson was sentenced but before Henderson's appeal was heard, this Court decided *Tapia* v. *United States*, 564 U. S. ___.  There, we held that it is error for a court to "impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Id.,* at ___ (slip op., at 15).  Given *Tapia*, Henderson's sentence was unlawful, and the District Court's decision to impose that sentence

was erroneous. But, since Henderson's counsel had not objected in the trial court, the Court of Appeals could not correct the error unless Rule 52(b) applied. The Rule, however, applies only if the error was "plain." The error was not plain before *Tapia*; it was plain after *Tapia*. Thus, the Fifth Circuit had to determine the temporal scope of Rule 52(b)'s words "plain error."

The appeals court decided that Rule 52(b) did not give it the authority to correct the trial court's error. 646 F. 3d, at 225. The appellate panel pointed out that, "[b]efore *Tapia*, there was a circuit split on whether a District Court can consider a defendant's rehabilitative needs to lengthen a sentence." *Ibid.* The panel added that the Fifth Circuit had "not pronounced on the question" before Henderson was sentenced. *Ibid.* Thus, at the time when the District Court reached its decision, the law in that Circuit was unsettled. The Court of Appeals concluded that "Henderson cannot show that the error in his case was plain, . . . because an error is plain only if it was clear under current law *at the time of trial.*" *Ibid.* (internal quotation marks omitted).

The Fifth Circuit denied rehearing en banc by a divided vote. 665 F. 3d 160 (2011) (*per curiam*) (7 to 10). Henderson filed a petition for certiorari. And we granted the petition to resolve differences among the Circuits. Compare, *e.g., United States* v. *Cordery*, 656 F. 3d 1103, 1107 (CA10 2011) (time of review), with, *e.g., United States* v. *Mouling*, 557 F. 3d 658, 664 (CADC 2009) (time of error).

## II

### A

Is the time for determining "plainness" the time when the error is committed, or can an error be "plain" if it is not plain until the time the error is reviewed? The question reflects a conflict between two important, here competing, legal principles. On the one hand, "'[n]o procedural

principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'"  *Olano*, 507 U. S., at 731 (quoting *Yakus* v. *United States*, 321 U. S. 414, 444 (1944)).  This principle favors assessing plainness limited to the time the error was committed.

On the other hand, "[t]he general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision."  *Thorpe* v. *Housing Authority of Durham*, 393 U. S. 268, 281 (1969).  See *Ziffrin* v. *United States*, 318 U. S. 73, 78 (1943).  Indeed, Chief Justice Marshall wrote long ago:

> "It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not.  But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. . . . In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."  *United States* v. *Schooner Peggy*, 1 Cranch 103, 110 (1801).

This principle favors assessing plainness at the time of review.

Rule 52(b) itself makes clear that the first principle is not absolute.  Indeed, we have said that a "'rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . the rules of fundamental justice.'"  *Olano,*

*supra,* at 732 (quoting *Hormel* v. *Helvering*, 312 U. S. 552, 557 (1941); ellipsis in original). But neither is the second principle absolute. Even where a new rule of law is at issue, Rule 52(b) does not give a court of appeals authority to overlook a failure to object unless an error not only "affect[s] substantial rights" but also "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano, supra,* at 732 (internal quotation marks omitted; brackets in original). Because the two principles here point in different directions and neither is absolute, we cannot decide this conflict simply by looking to one rather than to the other.

The text of Rule 52(b) does not resolve the problem. It does not say that a court of appeals may consider an "error that *was* plain"—language that would look to the past. Rather, it simply says that a court of appeals may consider "[a] plain error." And that language leaves the temporal question open. But see *infra*, at 12.

Neither does precedent answer the temporal question— at least not directly. *Olano* is clearly relevant. There, we said that Rule 52(b) authorizes an appeals court to correct a forfeited error only if (1) there is "an error," (2) the error is "plain," and (3) the error "affect[s] substantial rights." 507 U. S., at 732 (internal quotation marks omitted). Pointing out that Rule 52 "is permissive, not mandatory," *id.,* at 735, we added (4) that "the standard that should guide the exercise of remedial discretion under Rule 52(b)" is whether "the error 'seriously affect[s] the fairness, in-tegrity or public reputation of judicial proceedings,'" *id.,* at 736 (quoting *United States* v. *Atkinson*, 297 U. S. 157, 160 (1936); brackets in original). At the same time, we said that "[w]e need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." 507 U. S., at 734. That is the case now before us.

*Johnson* v. *United States*, 520 U. S. 461 (1997), is also

relevant. We there considered a trial court's decision that was clearly correct under Circuit law when made but which, by the time of review, had become plainly erroneous due to an intervening authoritative legal decision. We concluded that, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Id.,* at 468. As in *Olano*, however, we declined to decide whether that same rule should apply where the law is unsettled at the time of error but plain at the time of review. 520 U. S., at 467–468. As we have said, this is precisely the case now before us.

B

The text, precedents, and background principles do not *directly* dictate a result here. But prior precedent has helped to shape current law. And that precedent, read in light of those underlying principles, leads us to interpret Rule 52(b)'s phrase "plain error" as applying at the time of review. Given *Johnson,* a "time of error" interpretation would prove highly, and unfairly, anomalous.

Consider the lay of the post-*Johnson* legal land: No one doubts that an (un-objected to) error by a trial judge will ordinarily fall within Rule 52(b)'s word "plain" as long as the trial court's decision was *plainly incorrect* at the time it was made. *E.g., Olano, supra,* at 734. That much is common ground. *Johnson* then adds that, at least in one circumstance, an (un-objected to) error by a trial judge will also fall within Rule 52(b)'s word "plain" *even if the judge was not plainly incorrect* at the time it was made. That is the circumstance where an error is "plain" even if the trial judge's decision was plainly *correct* at the time when it was made but subsequently becomes incorrect based on a change in law. 520 U. S., at 468. And, since by definition the trial judge did not commit *plain error* at the time of the ruling, *Johnson* explicitly rejects applying the words

"plain error" as of the time when the trial judge acted. Instead, *Johnson* deems it "enough that an error be 'plain' at the time of appellate consideration" for that error to fall within Rule 52(b)'s category of "plain error." *Ibid.*

But if the Rule's words "plain error" cover both (1) trial court decisions that were plainly correct at the time when the judge made the decision and (2) trial court decisions that were plainly *in*correct at the time when the judge made the decision, then why should they not also cover (3) cases in the middle—*i.e.,* where the law at the time of the trial judge's decision was neither clearly correct nor incorrect, but unsettled?

To hold to the contrary would bring about unjustifiably different treatment of similarly situated individuals. Imagine three virtually identical defendants, each from a different circuit, each sentenced in January to identical long prison terms, and each given those long sentences for the same reason, namely to obtain rehabilitative treatment. Imagine that none of them raises an objection. In June, the Supreme Court holds this form of sentencing unlawful. And, in December, each of the three different circuits considers the claim that the trial judge's January-imposed prison term constituted a legal error. Imagine further that in the first circuit the law in January made the trial court's decision clearly lawful as of the time when the judge made it; in the second circuit, the law in January made the trial court's decision clearly unlawful as of the time when the judge made it; and in the third circuit, the law in January was unsettled.

To apply Rule 52(b)'s words "plain error" as of the time of appellate review would treat all three defendants alike. It would permit all three to go on to argue to the appellate court that the trial court error affected their "substantial rights" and "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, *supra*, at 732 (internal quotation marks omitted). To interpret

"plain error" differently, however, would treat these three virtually identical defendants differently, allowing only the first two defendants, but not the third defendant, potentially to qualify for Rule 52(b) relief. All three defendants suffered from legal error; all three failed to object; and all three would benefit from the new legal interpretation. What reason is there to give two of these three defendants the benefits of a new rule of law, but not the third? Cf. *Schooner Peggy*, 1 Cranch, at 110.

There is no practical ground for making this distinction. To the contrary, to distinguish and treat more harshly cases where a circuit's law was unclear would simply promote arguments about *whether* the law of the circuit initially was unclear (rather than clearly settled one way or the other). And these arguments are likely to be particularly difficult to resolve where what is at issue is a matter of legal degree, not kind. To what extent, for example, did a prosecutor's closing argument go *too far* down the road of prejudice? A "time of error" interpretation also would require courts of appeals to play a kind of temporal ping-pong, looking at *the law that now is* to decide whether "error" exists, looking at *the law that then was* to decide whether the error was "plain," and looking at *the circumstances that now are* to decide whether the defendant has satisfied *Olano*'s third and fourth criteria. Thus, the "time of error" interpretation would make the appellate process yet more complex and time consuming.

We recognize, as the Solicitor General points out, that a "time of error" rule, even if confined to instances in which the law is uncertain, would in such cases provide an added incentive to counsel to call the lower court judge's attention to the matter at a time when that judge could quickly take remedial action. And, even if no remedy is offered, the lower court judge's analysis may help the court of appeals to decide the legal question. See Brief for United States 30–32. See also *Mouling*, 557 F. 3d, at 664. We

disagree with the Solicitor General, however, in that we also believe that, in the present context, any added incentive has little, if any, practical importance.

That is because counsel normally has other good reasons for calling a trial court's attention to potential error—for example, it is normally to the advantage of counsel and his client to get the error speedily corrected. And, even where that is not so, counsel cannot rely upon the "plain error" rule to make up for a failure to object at trial. After all, that rule will help only if (1) the law changes in the defendant's favor, (2) the change comes after trial but before the appeal is decided, (3) the error affected the defendant's "substantial rights," and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U. S., at 732 (internal quotation marks omitted). If there is a lawyer who would deliberately forgo objection *now* because he perceives some slightly expanded chance to argue for "plain error" *later,* we suspect that, like the unicorn, he finds his home in the imagination, not the courtroom.

The upshot is that a "time of review" interpretation furthers the basic *Schooner Peggy* principle that "an appellate court must apply the law in effect at the time it renders its decision." *Thorpe*, 393 U. S., at 281. It works little, if any, practical harm upon the competing administrative principle that insists that counsel call a potential error to the trial court's attention. And, it is consistent with the basic purpose of Rule 52(b), namely the creation of a fairness-based exception to the general requirement that an objection be made at trial. See *supra,* at 4.

At the same time, the competing "time of error" rule is out of step with our precedents, creates unfair and anomalous results, and works practical administrative harm. Thus, in the direct appeals of cases that are not yet final, we consider the "time of review" interpretation the better reading of Rule 52's words "plain error."

### III

The Solicitor General makes several other important arguments, but they fail to lead us to a different conclusion. First, the Government argues that the purpose of plain-error review is to ensure "the integrity of the [trial] proceedings." Brief for United States 33–34. In turn, the argument goes, appellate courts should consider only (1) errors that counsel called to the court's attention *and* (2) errors that the trial court should have known about regardless, namely those that *then* were plain. Expanding on this theme, one Court of Appeals described plain error as "error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection. When the state of the law is unclear at trial and only becomes clear as a result of later authority, the District Court's error is perforce not plain; we expect district judges to be knowledgeable, not clairvoyant." *United States* v. *Turman*, 122 F. 3d 1167, 1170 (CA9 1997) (citation omitted).

This approach, however, overlooks the way in which the plain-error rule—Rule 52(b)—restricts the appellate court's authority to correct an error to those errors that would, in fact, seriously affect the fairness, integrity, or public reputation of judicial proceedings. Cf. *United States* v. *Farrell*, 672 F. 3d 27, 36–37 (CA1 2012) (considering the issue from this perspective). And the approach runs headlong into *Johnson*. The error in *Johnson* was not an error that the District Court should have known about at the time. It was the very opposite: The District Judge should have known that his ruling (at the time he made it) was *not* error; and perhaps not even clairvoyance could have led him to hold to the contrary. Cf. *Khan* v. *State Oil Co.*, 93 F. 3d 1358, 1362–1364 (CA7 1996) (registering disagreement with this Court's precedent while following it nonetheless); *State Oil Co.* v. *Khan*, 522 U. S. 3, 20–22 (1997) (approving of that approach).

Rather, *Johnson* makes clear that plain-error review is not a grading system for trial judges. It has broader purposes, including in part allowing courts of appeals better to identify those instances in which the application of a new rule of law to cases on appeal will meet the demands of fairness and judicial integrity. See *Johnson*, 520 U. S., at 467–468; *Olano*, 507 U. S., at 732.

Second, the Government fears that our holding will lead to too many claims of "plain error." Brief for United States 26–28. After all, courts of appeals, not just the Supreme Court, clarify the law through their opinions. When a court of appeals does so, will not all defendants, including many who never objected in the court below, insist that the court of appeals now judge their cases according to the new rule? And will "plain error" in such cases not then disappear, leaving only simple "error" in its stead?

The answer to this claim is that a new rule of law, set forth by an appellate court, cannot automatically lead that court to consider all contrary determinations by trial courts *plainly* erroneous. Many such new rules, as we have pointed out, concern matters of degree, not kind. And a lower court ruling about such matters (say, the nature of a closing argument), even if now wrong (in light of the new appellate holding), is not necessarily *plainly* wrong. The Rule's requirement that an error be "plain" means that lower court decisions that are questionable but not *plainly* wrong (at time of trial or at time of appeal) fall outside the Rule's scope.

And there are other reasons for concluding that our holding will not open any "plain error" floodgates. As we have said, the Rule itself contains other screening criteria. The error must have affected the defendant's substantial rights and it must have seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Olano*, *supra,* at 732. When courts apply these latter criteria, the fact that a defendant did not object, despite

unsettled law, may well count against the grant of Rule 52(b) relief. Moreover, the problem here arises only when there is a new rule of law, when the law was previously unsettled, and when the District Court reached a decision contrary to the subsequent rule. These limitations may well explain the absence of any account before us of "plain error" inundation in those Circuits that already follow the interpretation we now adopt. See, *e.g., Farrell, supra*, at 36–37; *Cordery*, 656 F. 3d, at 1107; *United States* v. *Garcia*, 587 F. 3d 509, 519–520 (CA2 2009); *United States* v. *Ross*, 77 F. 3d 1525, 1539 (CA7 1996).

Finally, the Government points out that Rule 52(b) is written mostly in the past tense. It says that a "plain error . . . may be considered even though it *was not brought* to the court's attention." (Emphasis added.) This use of the past tense, the Government argues, refers to a "plain error" that was not "brought to the court's attention" *back then,* when the error occurred. And that linguistic fact, in turn, means that the error must have been plain at that time. Brief for United States 18–22.

Whatever the merits of this textual argument, however, *Johnson* forecloses it. The error at issue in that case was not even an error, let alone plain, at the time when the defendant might have "brought [it] to the court's attention." Nonetheless, we found the error to be "plain error." We cannot square the Government's textual argument with our holding in that case.

## IV

For these reasons, we conclude that whether a legal question was settled or unsettled at the time of trial, "it is enough that an error be 'plain' at the time of appellate consideration" for "[t]he second part of the [four-part] *Olano* test [to be] satisfied." *Johnson*, *supra,* at 468. The contrary judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent

with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———

No. 11–9307

———

## ARMARCION D. HENDERSON, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[February 20, 2013]

JUSTICE SCALIA, with whom JUSTICE THOMAS and JUSTICE ALITO join, dissenting.

When the law was unsettled at the time an error was committed, the error is not "plain" within the meaning of Federal Rule of Criminal Procedure 52(b). To hold otherwise disregards the importance of claim preservation and deprives Rule 52(b)'s plainness limitation of all conceivable purpose.

## I

The Court begins its analysis by misconceiving our task. We are here, it thinks, in order to resolve a supposed "conflict" between two "competing . . . legal principles," *ante*, at 3—the principle that a legal right may be forfeited by the failure to assert it in a timely fashion, and the principle that an appellate court must apply the law in effect at the time of its judgment. To begin with, there is no such conflict. Forfeiture rules establish *exceptions* to the legal rights that they qualify; like all exceptions they do not "conflict" with what they modify but rather mark out its scope. And second, our task in this case is not the exalted philosophical one of deciding where justice lies. It is presumed (rightly or not) that Congress has taken that into consideration in approving the Rules of Criminal Procedure. Ours, alas, is the more mundane and lawyerly

task of deciding whether the Rules of Criminal Procedure make the failure of timely objection an exception to the rule that an appellate court applies the law in effect at the time of its judgment.

Having addressed itself to the wrong question, the Court unsurprisingly gives the wrong answer. The correct answer must be sought in the text of the Federal Rules of Criminal Procedure, beginning with Rule 51(b), which provides: "A party may preserve a claim of error by informing the court—*when the court ruling or order is made or sought*—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." (Emphasis added). Surely this means that a party does *not* preserve a claim of error—cannot assert that on appeal, whatever the law on the point may be—unless he informs the court or objects to the court's action when the ruling or order is made or sought. If it does not mean that, it means nothing.

We move then to Rule 52(b), which says: "A plain error that affects substantial rights may be considered even though it was not brought to the [trial] court's attention." The meaning of that is not difficult to grasp. It is an exception to Rule 51(b)'s rule of forfeiture—an exception that applies only to "plain error." The question before us is whether plainness means plainness at the time "the [trial] court ruling or order is made or sought" or plainness when the case reaches the Court of Appeals.

The answer to that question seems to me entirely clear. A rudimentary principle of textual interpretation—so commonsensical that it scarcely needs citation—is that if one interpretation of an ambiguous provision causes it to serve a purpose consistent with the entire text, and the other interpretation renders it pointless, the former prevails. Limiting review of forfeited errors to those that were "plain" when the objection should have been made serves a purpose consistent with Rule 51: It permits re-

viewing courts to correct error where doing so will not thwart the objective of causing objections to be made when they can do some good. Objection is not so much needed when the error ought to be plain to the court and to the prosecution. And the fault in overlooking such an error is not solely the defendant's, but must be shared equally by the court and the prosecutor. We have affirmed this principle, and have affirmed the proposition that plainness is to be determined at the trial stage, in our prior opinions. "By its terms, recourse may be had to [Rule 52(b)] only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States* v. *Frady*, 456 U. S. 152, 163 (1982). Where error at trial is plain, the rationale for penalizing forfeiture is at its weakest and the injustice to the defendant correspondingly strong.

The Court, on the other hand, is unable to provide *any purpose* served by a plainness requirement applied when the case reaches the Court of Appeals. Consider two defendants in the same circuit who fail to object to an identical error committed by the trial court under unsettled law. By happenstance, Defendant A's appeal is considered first. The court of appeals recognizes that there was error, but denies relief because the law was unclear up to the time of the court of appeals' opinion. Defendant B's appeal is heard later, and he reaps the benefit of the opinion in Defendant A's case settling the law in his favor. What possible purpose is served by distinguishing between these two appellants? "The negligence in not raising the error is equivalent regardless of what happens by the time of appeal." *United States* v. *Escalante-Reyes*, 689 F. 3d 415, 429 (CA5 2012) (en banc) (Smith, J., dissenting). Since a plain-error doctrine of this sort cannot possibly induce counsel to make contemporaneous objection, it seemingly has no purpose whatever *except* to create the

above described anomaly.

No, that is not quite true.  It does serve the purpose of enabling today's opinion to say that the plain-error rule has been "preserved," and has not been entirely converted to a simple-error rule.   Of course a simple-error rule—*all* trial-court mistakes affecting substantial rights can be corrected on appeal—would better serve the Court's mistaken understanding that the only purpose of Rule 52(b) is fairness, *ante*, at 9,[1] combined with its erroneous perception that *all* defendants who fail to make a timely objection to misapplication of the law stand in the same boat, see *ante,* at 7.  But a simple-error rule would be contrary to the clear text of Rule 52(b), which tempers Rule 51(b) with "fairness" only when the error is plain. The Court must find *some* application for the plainness requirement, even if it be one that is utterly pointless.  It has done so.

## II

The Court contends that evaluating plainness at the trial-court level "runs headlong into *Johnson* [v. *United States*, 520 U. S. 461 (1997)]."  *Ante*, at 10.   The error

———————

[1] The reality, of course, is that the object of Rule 52(b) is fairness *to the extent that is compatible with preservation of the principal objective of the contemporaneous-objection requirement of Rule 51(b).*  The Court suppresses this limitation by paying lip service to *Olano*'s four-prong Rule 52(b) analysis while reducing the plain-error requirement which is part of that analysis to a nullity.  It asserts that "the plain-error rule— Rule 52(b)—restricts the appellate court's authority to correct an error to those errors that would, in fact, seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Ante*, at 10.  That is a description of prong 4 of the *Olano* analysis, see *United States* v. *Olano*, 507 U. S. 725, 732 (1993), which does not even *pertain* to the words "plain error" in Rule 52(b), but rather to the word "may"—to when a court should *exercise* its discretion to consider an unobjected-to plain error.  It has nothing whatever to do with plainness.  Rule 52(b) clearly restricts review to those unobjected-to errors that are *plain*, and the Court offers no explanation—none—of what purpose that restriction can possibly serve if plainness is determined at the appellate stage.

there, it points out, "was not an error that the District Court should have known about at the time." *Ibid. Johnson* would have been decided the same way at whatever stage the plainness requirement was evaluated, since the Court found that the error did "not meet the final requirement of *Olano*," that "the forfeited error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" 520 U. S., at 469.[2] I accept, however, that the Court said in *Johnson*, and will presumably hold in future cases, that in the situation presented by that case, plainness at the time of appeal will suffice. That was a situation in which the law was settled against the defendant at trial but became plain in his favor by the time of appeal. As to that narrow class of cases, a time-of-appeal rule promotes both the fairness and efficiency concerns of Rule 51(b). When the law is settled against a defendant at trial he is not remiss for failing to bring his claim of error to the court's attention. It would be futile. An objection would therefore disserve efficiency, and a time-of-trial rule "would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." *Id.*, at 468. In that unique context, a time-of-appeal approach actually "furthers the substantial interest in the orderly administration of justice that underlies the contemporaneous objection rule." *United States* v. *David*, 83 F. 3d 638, 644 (CA4 1996).

The Court wrote in *Johnson* a circumspect opinion that took pains to exclude from the time-of-appeal method it articulated the case before us now. After agreeing with the petitioner that in the situation before the Court a time-of-trial rule would impede rather than assist fairness

---

[2] That is why I was able to join the judgment in *Johnson*, even though I did not join the portion of the opinion addressing the stage at which plainness was to be evaluated. See 520 U. S., at 462.

and efficiency, the opinion said that "in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." 520 U. S., at 468. The limitation of the Court's opinion is clear. The concerns that justified evaluating plainness at the time of appeal in *Johnson* cut against such a rule here, where the law was not clear but uncertain at the time of trial. In the difficult and often hectic process of conducting a trial, a judge depends on the parties—"officers of the court"—to flag less-than-obvious issues that might otherwise escape his notice. A prompt claim of error in those circumstances is not futile but eminently useful.

The Court hypothesizes three defendants failing to object at trial to a ruling that later (before the case reaches the court of appeals) is shown by a Supreme Court opinion to have been error: one tried in a circuit whose law at the time clearly accorded with the Supreme Court's holding, one tried in a circuit whose law clearly contradicted that holding, and one tried in a circuit whose law on the point was uncertain. *Ante,* at 7. These defendants, the Court asserts, are "similarly situated," and the plain-error-at-time-of-appeal rule appropriately treats them alike. But they are not "similarly situated" insofar as the purposes of Rules 51(b) and 52(b) are concerned, and treating them alike frustrates those purposes. Where the circuit law clearly accorded with the Supreme Court's later opinion, the trial court should have known that law, and hence the raising of the point by counsel should not have been needed; this is the classic case for plain-error reversal on appeal. Where the circuit law clearly contradicted the later Supreme Court opinion, again the trial court should have known that law, and counsel's raising the point would be futile and wasteful rather than sparing of judicial resources; this is the classic case for *Johnson*

reversal on appeal. Where the circuit law was unsettled, the trial court was most in need of counsel's assistance, and the failure to provide it has no excuse; this is the classic case for normal application of the contemporaneous-objection requirement of Rule 51(b). To be sure, these litigants are alike in that all three "suffered from legal error," *ante,* at 8; and if the sole, unqualified objective of appellate review were to correct trial-court error that would suffice to entitle them to equal treatment. Until today, however, the objective of correcting trial-court error *has* been qualified by the objective of inducing counsel to bring forward claims of error when they can be remedied without overturning a verdict and setting the convicted criminal defendant free. To overlook counsel's failure to object, spend judicial resources to conduct plain-error review, and set aside a criminal conviction where retrial may be difficult if not impossible, is exactly the "'extravagant protection'" that this Court has up until now disavowed. *United States* v. *Young*, 470 U. S. 1, 16 (1985) (quoting *Henderson* v. *Kibbe*, 431 U. S. 145, 154, n. 12 (1977), in turn quoting *Namet* v. *United States*, 373 U. S. 179, 190 (1963)).

## III

The Court sees no harm in its evisceration of the contemporaneous-objection rule, disbelieving that a lawyer would "deliberately forgo objection *now* because he perceives some slightly expanded chance to argue for 'plain error' *later,*" *ante,* at 9. It is hard to say whether this conclusion springs from a touching faith in the good sportsmanship of criminal defense counsel or an unkind disparagement of their intelligence. Where a criminal case always has been, or has at trial been shown to be, a sure loser with the jury, it makes entire sense to stand silent while the court makes a mistake that may be the basis for undoing the conviction. The happy-happy

thought that counsel will not "deliberately forgo objection" is not a delusion that this Court has hitherto indulged, worrying as it has (in an opinion joined by the author of today's opinion) about counsel's "'sandbagging the court'" by "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Puckett* v. *United States*, 556 U. S. 129, 134 (2009). In any event, sandbagging is not the only evil to be feared. What is to be feared even more is a lessening of counsel's diligent efforts to identify uncertain points of law and bring them (or rather the defendant's version of them) to the court's attention, *so that error will never occur.* It is remarkably naïve to disbelieve the proposition that lessening the costs of noncompliance with Rule 51(b) diminishes the incentives to be diligent in objecting. See Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1135 (1986). Meant to apply only in "exceptional circumstances," *United States* v. *Atkinson*, 297 U. S. 157, 160 (1936), Rule 52(b) today has been transformed into an end-run around the consequences of claim forfeiture.

The Court's final argument, that a time-of-error rule would "wor[k] practical administrative harm," *ante,* at 9, is even more peculiar than the rest of its opinion. Whatever administrative ease may flow from a time-of-appeal rule (and more on that in a moment) it is outweighed by "lower[ing] the bar for plain-error review, which will undoubtedly result in more remands and new trials." *Escalante-Reyes*, 689 F. 3d, at 431 (Smith, J., dissenting). The Court's Pollyannaish rejoinder is that few reversals will occur anyway because a defendant must still show that the error affected his substantial rights (*Olano* prong 3) and seriously affected the fairness of judicial proceedings (*Olano* prong 4), *ante,* at 11–12. I doubt that. *Many* hitherto forfeited claims may incorrectly be found to meet those vague requirements. And all claims—whether found

to meet them or not—will have to be evaluated under those vague standards, requiring intensive consideration and producing a judgment whose correctness is often difficult to assess.

As for the Court's belief that it is difficult to assess whether error was plain at the time of trial: it is really not that hard. Appellate courts regularly conduct that type of inquiry in other areas of law. For example, in the context of federal habeas corpus review under 28 U. S. C. §2254(d)(1) relief may not be granted to a state prisoner based on a legal error unless that error was contrary to or an unreasonable application of clearly established federal law as of "'the time the state court render[ed] its decision,'" *Cullen* v. *Pinholster*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 10). Similarly, we determine whether public officials have immunity based on what law was clearly established at the time of their acts. See *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818–819 (1982). The Court offers us no reason to believe the inquiry would be any more difficult in this context.

In any event, a time-of-appeal rule for assessing plainness does not eliminate the need to assess plainness. And contrary to the Court's belief, that need will not arise only "when there is a *new* rule of law, when the law was previously unsettled, and when the District Court reached a decision contrary to the *subsequent* rule." *Ante*, at 12 (emphasis added). That easy situation, which exists in the present case, may well be the exception rather than the rule for claims that failure to object to plain error should be excused. For a trial-court error is plain not only when it becomes so in retrospect, after the law has subsequently been clarified; but also when the court disregards the *pre-existing* "'clarity of a statutory provision or court rule.'" *United States* v. *Perry*, 479 F. 3d 885, 893, n. 8 (CADC 2007). This Court recognized as much in *United States* v. *Olano*, 507 U. S. 725 (1993), where the Government "es-

sentially concede[d]," and this Court accepted, that the District Court's interpretation of Federal Rule of Criminal Procedure 24(c) was plainly erroneous, even though the appellate court had yet to say so, because the text of the rule was so clear. *Id.*, at 737. For that and other reasons, the question whether the law was "unsettled" will often not admit of an easy answer, and our Courts of Appeals will have to resolve lots of claims that it was not. The practical difficulties the Court professes to avoid will not be avoided.

\* \* \*

Today's opinion converts the "plain error" limitation of Rule 52(b), a limitation designed to induce trial objections that will assist the court, into a limitation designed to serve no conceivable purpose at all. Fair trial will suffer from the ensuing disregard of the now unenforceable contemporaneous-objection rule. I respectfully dissent.