**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

NAPOLEON ARTURO BUSTAMANTE,
AKA King Arthur XIII, AKA
Arthur Lee Bustamante, AKA
Arturo Lim Bustamante, AKA
Ricardo Arthur Lee Bustamante,
            *Defendant-Appellant.*

No. 11-50075

D.C. No.
5:10-cr-00043-
VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
June 8, 2012—Pasadena, California

Filed August 7, 2012

Before: Betty B. Fletcher and Kim McLane Wardlaw,
Circuit Judges, and John A. Mendez, District Judge.*

Opinion by Judge B. Fletcher;
Partial Concurrence and Partial Dissent by Judge Mendez

---

*The Honorable John A. Mendez, District Judge for the U.S. District
Court for Eastern California, sitting by designation.

**COUNSEL**

Davina T. Chen, Deputy Federal Public Defender, Los Angeles, California, for appellant Napoleon Arturo Bustamante.

Dorothy Mclaughlin, Assistant United States Attorney, Riverside, California, for appellee United States of America.

**OPINION**

B. FLETCHER, Circuit Judge:

Napoleon Arturo Bustamante appeals his convictions for illegal reentry in violation of 8 U.S.C. § 1326, making a false statement in a passport application in violation of 18 U.S.C. § 1542, and making a false statement in an application for supplemental security income benefits in violation of 42 U.S.C. § 1383a(a)(1). These convictions rested on the government's allegation that Bustamante is not a United States citizen. To prove that allegation, the government introduced a document appearing to be a transcription of Bustamante's birth certificate from the Philippines. We conclude that the introduction of this document violated Bustamante's rights under the Confrontation Clause of the Sixth Amendment. Because this error was not harmless beyond a reasonable doubt, we vacate Bustamante's convictions and remand for a new trial.

**I.**

Bustamante lived in the United States for many years and on many occasions held himself out as a natural-born U.S. cit-

izen. He possessed a U.S. passport and a delayed registration of birth from California stating that he was born in Stockton, California on February 1, 1945. While Bustamante was serving in the Air Force in the 1970s, the Air Force became concerned about Bustamante's claim of citizenship and began an investigation in 1973. The investigation determined that the evidence of Bustamante's citizenship was inconclusive, and he was honorably discharged in 1976. The government then initiated immigration proceedings against Bustamante, but those proceedings were dismissed.

Bustamante continued living and working in the United States until 2006, when he was arrested for writing counterfeit checks. The investigation after his arrest found that he had been born in the Philippines and was thus not a U.S. citizen. Bustamante was convicted of uttering a counterfeit security, impersonating a U.S. citizen, and making false statements. He was sentenced to 21 months in prison and deported to the Philippines on April 8, 2008.

A few months later, Bustamante went to the U.S. Embassy in Manila and applied for a U.S. passport. He submitted a photocopy of his social security card, a photocopy of an old U.S. passport, and a Department of Veterans Affairs ID card. Bustamante received a passport and returned to the United States. After returning, Bustamante applied for social security benefits, submitting his passport and his delayed registration of birth from California as proof of citizenship. Bustamante's application was denied, and he was arrested in July 2010 and charged with the present offenses of conviction.

## II.

The government introduced several documents at trial to prove that Bustamante was born in the Philippines and is not a U.S. citizen. One of these documents, the government's Exhibit 1, purported to be a "copy" of Bustamante's Philippine birth certificate. This document was obtained by the gov-

ernment in 1975 as part of the Air Force investigation into Bustamante's citizenship.[1] It is a one-page, typewritten document labeled: "Republic of the Philippines, City of Bacolod, Office of the Local Civil Registrar, Birth Certificate." It is not a photocopy or duplicate. It states: "This is to certify that according to the record of births in this office, the following is the copy of the birth certificate of: Napoleon Bustamante." It then goes on to transcribe the information contained at Page 86, Register No. 401 of the office's birth records, most notably that Napoleon Bustamante was born on February 1, 1939, in the City of Bacolod. It concludes by stating: "The foregoing is issued this 14th day of October 1975 in the City of Bacolod, Philippines, upon the request of Mr. Robert L. Coffman for whatever purpose it may serve her/him." It is signed by "Demetrio B. Salupisa, Chief, Civil Registrar, For & In the Absence of the Local Civil Registrar."

Shortly before trial, the government gave Bustamante documents it had just received indicating that the Philippine authorities no longer had any record of Bustamante's birth. Both the Philippine National Statistics Office and the Bacolod City Civil Registry Office confirmed that they had no birth records for Napoleon Bustamante or any of his aliases. The City of Bacolod document explained that "our record filed in this office covering the period from 1939 to 1946 is totally mutilated," and emails accompanying the discovery further explained that "there was poor record keeping for [birth certificates] prior to World War II."

Based on this information, Bustamante objected to the admission of Exhibit 1, arguing that it was not a properly authenticated foreign public document under Federal Rule of Evidence 902(3) and that its authenticity was suspect because

---

[1]The government's witnesses gave inconsistent testimony about whether Exhibit 1 was requested by the Air Force or by immigration authorities, but there is no dispute that it was requested as part of the government's investigation into Bustamante's citizenship.

there was no longer any record in the Philippines of Bustamante's birth. At the district court's direction, the government took steps to authenticate Exhibit 1, obtaining a chain of certifications establishing that Demetrio B. Salupisa was authorized to issue birth certificates and that Salupisa's signature was similar to the record on file with the National Statistics Office. After the district court ruled that FRE 902(3) had been satisfied, Bustamante further objected to the admission of Exhibit 1, arguing that it was testimonial evidence that was inadmissible under *Crawford v. Washington*, 541 U.S. 36 (2004), and *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). The district court held that the document was not testimonial. After a four-day jury trial, Bustamante was convicted on all three counts and sentenced to thirty months imprisonment.

Bustamante timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo whether the admission of a document violated a defendant's Confrontation Clause rights. *United States v. Chung*, 659 F.3d 815, 832 (9th Cir. 2011).

### III.

**[1]** The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, the Supreme Court held that this "bedrock procedural guarantee" prohibits the admission of "testimonial statements of a witness who [does] not appear at trial unless [the witness is] unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination." 541 U.S. at 42, 53-54. Although the Court declined "to spell out a comprehensive definition of 'testimonial,' " *id.* at 68, it provided examples of "various formulations," including:

> [E]x parte in-court testimony or its functional equivalent—that is, material such as affidavits, cus-

todial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotation marks and citations omitted).

Five years later in *Melendez-Diaz v. Massachusetts*, the Supreme Court held that "certificates of analysis" reporting the results of forensic tests showing that certain material was cocaine were testimonial statements under *Crawford*, requiring the analysts who completed the certificates to be subject to confrontation. 129 S. Ct. 2527 (2009). The Court held that the despite being labeled "certificates," the documents at issue were "quite plainly affidavits" that "fall within the 'core class of testimonial statements' " described in *Crawford*. *Id.* at 2532; *see also id.* ("Our description of that category mentions affidavits twice.").

In determining that the certificates of analysis were testimonial, the Court emphasized that they were "incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact,' " *id.* (quoting *Crawford*, 541 U.S. at 51); that they were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination," *id.* (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)); and that they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *id.* (quoting *Crawford*, 541 U.S. at 52).

The Court also distinguished the certificates of analysis from ordinary "[b]usiness and public records," which "are

generally admissible absent confrontation, not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 2539-40. In that discussion, the Court also indicated that authentications of existing non-testimonial records do not implicate the Confrontation Clause: "A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.* at 2539. By contrast, the Court suggested that "a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it" was a testimonial statement. *Id.*

**[2]** These cases compel us to conclude that Exhibit 1 is a testimonial statement. In essence, Exhibit 1 is an affidavit testifying to the contents of the birth records of the City of Bacolod and is "functionally identical to [the] live, in-court testimony" that an employee of the Civil Registrar's office might have provided. *Id.* at 2532. It was also created for the purpose of the Air Force investigation into Bustamante's citizenship and was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* (quoting *Crawford*, 541 U.S. at 52). The admission of Exhibit 1 therefore violated Bustamante's confrontation rights because Bustamante did not have a prior opportunity to examine Salupisa. *Crawford*, 541 U.S. at 68-69.

**[3]** The government argues that Exhibit 1 is not testimonial because birth certificates are non-testimonial public records. Our holding today does not question the general proposition that birth certificates, and official duplicates of them, are ordinary public records "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Melendez-Diaz*, 129 S. Ct. at 2539-40. But

Exhibit 1 is not a copy or duplicate of a birth certificate. Like the certificates of analysis at issue in *Melendez-Diaz*, despite being labeled a copy of the certificate, Exhibit 1 is "quite plainly" an affidavit. *See id.* at 2532. It is a typewritten document in which Salupisa testifies that he has gone to the birth records of the City of Bacolod, looked up the information on Napoleon Bustamante, and summarized that information at the request of the U.S. government for the purpose of its investigation into Bustamante's citizenship. Rather than simply authenticating an existing non-testimonial record, Salupisa created a new record for the purpose of providing evidence against Bustamante. *See id.* at 2539. The admission of Exhibit 1 without an opportunity for cross examination therefore violated the Sixth Amendment.

## IV.

The government argues that even if Bustamante's confrontation rights were violated, the error was harmless. The government bears the burden of proving that a Confrontation Clause error is harmless beyond a reasonable doubt. *United States v. Nguyen*, 565 F.3d 668, 675 (9th Cir. 2009). "In evaluating whether a Confrontation Clause violation is harmless, [this court] considers a variety of factors," including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of crossexamination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*United States v. Orozco-Acosta*, 607 F.3d 1156, 1161-62 (9th Cir. 2010) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

The government maintains that the strength of its other evidence regarding Bustamante's citizenship renders the admis-

sion of Exhibit 1 harmless. The government points out that it also introduced marriage and school records indicating that Bustamante was born in the Philippines in 1939; the birth certificate of Bustamante's daughter, which also indicated that her father had been born in the Philippines; and a visa application and entry document indicating that Bustamante entered the United States from the Philippines in 1970. The government also presented evidence of Bustamante's previous conviction and deportation.

**[4]** We agree that this evidence was strong, but we cannot conclude that it made the admission of Exhibit 1 harmless beyond a reasonable doubt. It is clear that Exhibit 1 was very important to the prosecution's case. Trial was continued to allow the government time to authenticate Exhibit 1 to satisfy evidentiary requirements. It provided direct testimony on the central, critical question at trial: Where was Bustamante born? Without the admission of Exhibit 1, the communications from the City of Bacolod and the Philippine National Statistics Office indicating that they had no record of Bustamante's birth would certainly have weakened the prosecution's case, and strengthened the defense argument that the other records introduced by the government could have belonged to a different Napoleon Bustamante. That evidence, combined with Bustamante's California baptismal certificate, delayed registration of birth, and U.S. passports, may have significantly altered the evidentiary picture. We cannot say beyond a reasonable doubt that the jury would have convicted Bustamante absent introduction of Exhibit 1.

Moreover, this case illustrates the importance of the Sixth Amendment's "bedrock procedural guarantee" of confrontation. *Crawford*, 541 U.S. at 42. The government introduced Salupisa's testimonial statement, made in 1975, declaring that the City of Bacolod had Bustamante's 1939 birth certificate. Other evidence indicated that the City of Bacolod's birth records from 1939 to 1945 were poorly kept and in any event had been completely destroyed. This contradiction could only

be resolved through cross-examination of Salupisa to determine where his information came from and when the birth records were destroyed. Without the crucible of cross-examination guaranteed by the Constitution, Bustamante had no way to test the reliability of a significant part of the government's case.

**[5]** The admission of Exhibit 1 violated Bustamante's Sixth Amendment rights, and that error was not harmless beyond a reasonable doubt. We VACATE Bustamante's convictions and REMAND for a new trial. We need not address Bustamante's remaining contentions on appeal.

VACATED and REMANDED.

---

J. Mendez, District Judge, concurring in part and dissenting in part:

I concur with the majority's conclusion that the government's Exhibit 1 was testimonial in nature and therefore admitted in error because Bustamante did not have the opportunity to cross-examine the individual who prepared the summary of Bustamante's purported birth record. I respectfully dissent because I believe that the Government met its burden of showing that the admission of Exhibit 1 was harmless beyond a reasonable doubt, making reversal and remand to the district court unnecessary.

"The prosecution bears the burden of proving [that an admission of evidence in violation of the Confrontation Clause] was harmless beyond a reasonable doubt." *United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 675 (9th Cir. 2009) (citing *United States v. Gillam*, 167 F.3d 1273, 1277 (9th Cir. 1999)). "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that

the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). This court examines a variety of factors to determine if an error is harmless, including: "whether the testimony was cumulative, the presence or absence of [evidence] corroborating or contradicting the testimony on material points, the extent of cross-examination, and of course, the overall strength of the prosecution's case." *Nguyen*, 565 F.3d at 675 (quoting *United States v. Mayfield*, 189 F.3d 895, 906 (9th Cir. 1999)).

I believe that a cross-examination of Mr. Salupisa, the person who created the 1975 Filipino birth record, had limited potential to damage the government's case. The parties disputed the authenticity of the birth certificate at trial, cross-examining two Government witnesses as to the authenticity of the document, and Bustamante's attorney argued at closing that the document was not credible. Accordingly, the question of the authenticity of the 1975 birth record was already before the jury, making the potential damage from cross-examining Salupisa duplicative of other evidence regarding the 1975 birth record's authenticity. *See United States v. Larson*, 495 F.3d 1094, 1108 (9th Cir. 2007) (holding that limiting cross examination of a witness is harmless error when a defendant has other opportunities to elicit testimony on similar issue).

Beyond the 1975 birth record, the government presented overwhelming evidence to corroborate its contention that Bustamante was born in 1939 in Bacolod City, the Philippines. *Id.* (finding that admission of evidence in violation of Confrontation Clause is harmless where the government offers significant corroborating evidence). The majority summarizes the government's evidence above, but fails to mention that the exhibits used by the government were provided by Bustamante to the Social Security Administration ("SSA") in support of his application for benefits. The documents provided by Bustamante to the SSA included his marriage contract, his extensive school records, and a birth certificate for his daughter. All of the documents list his birthplace as the

Philippines and his nationality as Filipino. Additionally, the immigration forms presented by the government not only indicated that Bustamante entered the United States from the Philippines, as the majority notes, but the forms, completed by Bustamante, also indicate that he was born in the Philippines.

Bustamante contends that admission of the 1975 birth record was not harmless beyond a reasonable doubt for two reasons. First, Bustamante argues that the 1975 record was central to the government's case because the government 1) sought a continuance in order to have the record admitted; 2) used it in its opening statement and closing statements; and 3) introduced the record through its first witness. Second, Bustamante argues that without the 1975 birth record, the only birth record in evidence was Bustamante's California delayed registration of birth.

Bustamante's first argument is not persuasive because of the sheer weight of evidence showing that he was born in the Philippines. As discussed in detail above, this evidence consisted of statements made by Bustamante himself both when applying for SSA benefits and when he first entered the United States. Even if the 1975 birth record is not considered, the overwhelming evidence in the record indicates that Bustamante was born in the Philippines. There is no other reasonable conclusion to be drawn from the evidence contained in the record.

Bustamante's reliance on the California delayed registration of birth is not persuasive because the government presented testimony at trial from Reverend Masters, the senior pastor of the Holman United Methodist Church, that the church did not own the building listed on the delayed registration of birth until 1951, 5 years after Bustamante's purported baptism at that location. Additionally, the government produced evidence from the church's records that Bustamante was baptized in 1971, not 1946 as listed on the baptismal cer-

tificate relied upon for his delayed registration of birth. Bustamante does not point to any evidence in the record that contradicts Reverend Masters's testimony or calls it into question. Thus, the only reasonable conclusion that a jury could draw based on the evidence is that Bustamante's California delayed registration of birth was invalid because it was based entirely on a fraudulent baptismal certificate.

For the foregoing reasons, I believe that the error of admitting the 1975 birth record was harmless beyond a reasonable doubt. The potential damage of cross examining Mr. Salupisa was minimal because the issue of the record's authenticity was already before the jury. The evidence of Bustamante's birth in the Philippines is overwhelming, and any contradictory evidence was shown to be fraudulent by the government. Finally, the overall strength of the prosecution's case was very high because of the uncontradicted evidence of Bustamante's birth in the Philippines. Since the evidence in the record shows that admission of the 1975 birth record was harmless beyond a reasonable doubt, I respectfully dissent from the majority's holding on this issue.