Opinion by Judge BENAVIDES; Partial Concurrence and Partial Dissent by Judge WARDLAW.
OPINION
BENAVIDES, Circuit Judge:
This is a direct criminal appeal from convictions for being a removed alien found in the United States in violation of 8 U.S.C. § 1326 and for making a false claim of United States citizenship in violation of 18 U.S.C. § 911. Finding no reversible error, we affirm the district court’s judgment.
I. FACTUAL AND PROCEDURAL HISTORY
A. Charged Conduct
On September 5, 2011, Defendant-Appellant Juan Macias (“Macias”) was arrested for illegal re-entry near the Tecate, California, Port of Entry. At approximately 4 o’clock in the morning, a seismic sensor indicated movement. Border Patrol Agent Russell Slingerland and two other agents responded to the location of the sensor. Upon investigation, they discovered Macias crouched behind boulders and brush in a steep canyon. Macias initially told the agents that he had no legal documents to be in the United States and that he entered by “jumping the [border] fence.” Macias also told the agents he was from Mexico. However, after Macias was brought into custody, he agreed to speak to an agent without an attorney and claimed under oath that he was born in Riverside, California. He said his mother *1014 had told him that he had been born in Riverside, but because he was born at home she never “registered” his birth. He claimed that he had a California birth certificate and was a United States citizen. However, he did not have the birth certificate with him.
B.First Trial
On September 27, 2011, a federal grand jury returned a two-count indictment, charging Macias with being a removed alien in the United States in violation of 8 U.S.C. § 1326 and with making a false claim of United States citizenship in violation of 18 U.S.C. § 911. A jury trial began on June 5, 2012, and on June 8, the district court declared a mistrial due to a hung jury. During the trial, Macias had submitted a “delayed registration of birth” document issued by the State of California, and it provided that he had been born in Riverside, California. Macias had obtained this delayed registration of birth document in 1998. After the mistrial, two of the jurors told the prosecutors that they could not find Macias guilty because there was no showing that Macias’s delayed registration of birth document had been invalidated.
C.Post-trial Investigation of Macias’s Birthplace
■ Subsequently, at the request of the prosecutor, two border patrol agents, Andrew Kahl and Brian Desrosiers, conducted an investigation regarding Macias’s place of birth. The agents interviewed Macias’s family members, including his father, who told them Macias was born in Mexico, and not in California. The interviews were conducted at Macias’s parents’ home in Riverside, California. Through investigators with the State Department, the agents obtained a birth certificate showing that Macias was born on October 31, 1960 in Yurecuaro, State of Michoacan, Mexico. That certificate was dated November 7, 1960. Additionally, the agents reviewed documents contained in the Macias family’s immigration files. Macias’s parents’ applications for lawful permanent residency provided that Macias had been born in Mexico.
Based on the above information discovered through their investigation, the agents concluded that Macias had been born in Mexico and then attempted to correct the birthplace listed on Macias’s delayed registration of birth. The State of California has a procedure to amend a delayed registration of birth. Two individuals with knowledge of the facts may apply for an amendment if there is an error in the document. Those two individuals must fill out a notarized sworn statement and pay a fee. Agent Kahl filled out the form and both Agents Kahl and Desrosiers signed the affidavit amending Macias’s delayed registration of birth. The amending affidavit provided that Macias’s birth actually occurred in Yurecuaro, Michoacan, Mexico and not Riverside, California. The agents mailed the affidavit to the California Office of Vital Records, and it was attached to the delayed registration of birth on file.
D.Retrial
The second jury trial began on July 17, 2012,- and once again, the central issue was whether Macias was born in Mexico or in California. We now turn to the evidence admitted at Macias’s retrial.
1. Birth Documents
Through the custodian of the California Office of Vital Records, the government introduced Macias’s delayed registration of birth and the amending affidavit that had been executed by the border patrol agents. More specifically, the evidence showed that in 1998, Macias, then age 37, completed the application for a delayed registration of birth and mailed it to the California *1015 Office of Vital Records. The application contained the purported signatures of his mother, Maria Macias (“Maria”), and a family friend, Ernestina Guerrero (“Guerrero”). The application provided that Guerrero was present at Macias’s birth on October 31, 1960, at “home” in Riverside, California. To receive a delayed registration of birth, the applicant must submit proof of his place of birth. Macias submitted with his application a copy of his daughter’s California birth cer-tifícate which listed her father’s (Macias’s) birthplace as California. The California Office of Vital Records issued the delayed registration of birth with the above information and mailed it to Macias.
As set forth previously, in 2012, the agents filed an amending affidavit, which was attached to the delayed registration of birth. Although the delayed registration of birth was admitted at the first trial, the amending affidavit was not in existence at the time of the first trial. At the time the government introduced into evidence the delayed registration of birth with the attached amending affidavit, the two agents who signed the affidavit had not testified. However, defense counsel subsequently called Agent Kahl, and he testified with respect to their investigation of Macias’s birthplace and the execution of the amending affidavit.
The government also introduced a copy of the previously mentioned Mexican birth certificate dated November 7, 1960, which provided that Macias was born in Mexico on October 31, 1960. Macias’s father, Felipe Macias, Sr. (“Felipe”), had signed this birth certificate, and there were two witnesses listed on it. This birth certificate had not been submitted at the first trial. Felipe testified that Macias was born in Yurecuaro, Michoacan, Mexico, and that he. was present at Macias’s birth. Eight days after the birth, he and Maria took Macias to the civil registry and obtained this birth certificate. He further testified that Maria, who could not read or write, did not sign the certificate but did place her fingerprint on it. The birth certificate also contained Felipe’s and Macias’s fingerprints.[1] Consistent with this evidence, one of Macias’s older brothers, Gil Macias, testified that Macias was born in Yurecuaro, Michoacan, Mexico.
2. Parents’ Immigration Files
In 1987, Felipe and Maria applied for lawful permanent residency in the United States. Their applications asked whether their children were United States citizens, and they checked the box “No” for all their children, including Macias. The applications provided that all their children were born in Mexico. The parents were granted lawful permanent residency and moved the family to Riverside, California.
3.' Macias’s Immigration File
Border Patrol Agent Kara Reale testified with respect to the contents of Macias’s immigration file. Macias had been deported to Mexico many times prior to this trial. Macias was first deported to Mexico in 1981, at the age of 21. During those proceedings, Macias requested to be returned to Mexico, stating that he was a citizen of Mexico.
In 1988 and 1989, Macias was again deported to Mexico based on his admissions during deportation proceedings. An audio recording of the 1988 hearing was played for the jury.
In 1992, during a deportation hearing, he initially claimed he was a citizen of *1016 Mexico and not the United States, asserting that his father had told him he was born in Mexico. However, he also stated that his mother’s friend had told him he was born in Riverside. The immigration judge offered him an opportunity to present evidence, and Macias responded that he “will fix that when [he] arrive[s] in Mexico.” The judge, then ordered Macias to be deported to Mexico. An audio recording of this hearing was played for the jury.
In 1994, during a deportation hearing, Macias was asked if he was a citizen of the United States and he responded negatively. He responded affirmatively when asked whether he was a native and citizen of Mexico. An audio recording of this hearing was played for the jury. In July of 1998, Macias was once again deported to Mexico, after stating that he was born in Mexico.
Macias’s immigration file also contained statements during deportation proceedings in 1997, 1998, and 2004, in which Macias admitted that he was born in Mexico and was a citizen of Mexico. Additionally, the government admitted warrants of removal demonstrating that Macias had been removed from the United States to Mexico in July 1998, November 2001, and September 2004. In November 2004, two months after the last removal proceedings, Macias told an immigration judge that he was a citizen of the United States. When the immigration judge asked him about his extensive deportation history, Macias responded that he had been lying about being born in Mexico. Macias told the judge that he did not discover that he was born in the United States until he was about 18 years old. The judge ordered Macias to be deported. Subsequently, in February 2011, during deportation proceedings, Macias was deported after admitting he was born in Mexico.
4. Instant Offenses
As previously set forth, on September 5, 2011, Agent Slingerland apprehended Macias near the Tecate, California, Port of Entry. Macias was hiding behind boulders and brush in a steep canyon. Macias initially stated that he had no legal documents to be in the United States and admitted that he was from Mexico. However, once Macias was in custody, he claimed under oath that he was born in Riverside, California, but that his mother had not “registered” his birth in California because he had been born at home. He also claimed that he had a California birth certificate and was a citizen of the United States. This conduct forms the basis of the instant convictions for being a removed alien found in the United States and for making a false claim of United States citizenship. 8 U.S.C. § 1326 and 18 U.S.C. § 911.
5. Verdict
On July 19, 2012, the jury returned a verdict of guilty on the two counts. On ■ May 13, 2013, the district court sentenced Macias to a 46-month sentence as to the illegal re-entry conviction and a 36-month sentence as to the false claim conviction, with the sentences running concurrently. Macias now appeals his convictions.
II. ANALYSIS
A. Confrontation Clause Violation
Macias contends that the district court’s admission of the border patrol agents’ amending affidavit, which was attached to his delayed registration of birth, violated his rights under the Sixth Amendment’s Confrontation Clause. The Confrontation Clause guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const. Amend. VI. The Confrontation “Clause *1017 forbids ‘admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.’ ” Ocampo v. Vail, 649 F.3d 1098, 1107 (9th Cir.2011) (quoting Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). In the case at bar, the government does not claim that the witnesses were unavailable or that Macias had a prior opportunity to cross examine them. Thus, the dispute is whether the affidavit constituted a testimonial statement.
Generally, we review de novo alleged violations of the Confrontation Clause. United States v. Bustamante, 687 F.3d 1190, 1193 (9th Cir.2012). Here, however, although Macias objected to the admission of the amending affidavit, he did not object on the basis of a violation of the Confrontation Clause. In his motion in limine filed just prior to the instant trial, Macias argued that the government should be precluded from introducing the border patrol agents’ amending affidavit based on, among other things, hearsay, lack of personal knowledge, and impermissible vouching.[2] Because Macias failed to preserve the argument by making a Confrontation Clause objection, this issue should be reviewed for plain error. United States v. Anekwu, 695 F.3d 967, 972-73 (9th Cir.2012) (reviewing Confrontation Clause argument for plain error). To show plain error, Macias must demonstrate: (1) error; (2) that is clear or obvious; (3) that affects the defendant’s substantial rights; and (4) that “the error seriously affects the fairness, integrity or public reputation of judicial proceedings.” Id. at 973 (internal quotation marks and citation omitted).[3]
1. Error
We must first determine whether the district court erred in admitting the amending affidavit. Under Crawford, we address whether the amending affidavit *1018 constitutes a testimonial statement. 541 U.S. at 53-54, 124 S.Ct. 1354. In Crawford, the Supreme Court gave examples of what constituted testimonial statements:
[E]x parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was'unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
Id. at 51-52, 124 S.Ct. 1354 (internal quotation marks and citations omitted).
Relying on Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), Macias contends that the amending affidavit was testimonial and therefore the government had the burden of calling the agents when it admitted the affidavit. We have recognized that Melendez-Diaz “stand[s] for the proposition that ‘[a] document created solely for an ‘evidentiary purpose,’ ... made in aid of a police investigation, ranks as testimonial.’ ” Anekwu, 695 F.3d at 974 (quoting Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011)) (elipsis and brackets in original). Here, the border patrol agents created the affidavit amending Macias’s delayed registration of birth at the behest of the prosecutor after the first trial resulted in a hung jury. After the mistrial, two of the jurors indicated that they had a problem with the delayed registration of birth document because it had not been invalidated. Thus, it is clear that an objective witness would reasonably believe that the agents’ amending affidavit was made for use at a later trial to invalidate Macias’s delayed registration of birth. Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354. And, indeed, it was used at Macias’s second trial for that purpose. Thus, the amending affidavit constituted a testimonial statement made by the agents.
Further, in Melendez-Diaz, the Supreme Court explained that the “Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court.” 557 U.S. at 324, 129 S.Ct. 2527. The Court opined that the Confrontation Clause’s “value to the defendant is not replaced by a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses.” Id. at 324-25, 129 S.Ct. 2527. Thus, the Supreme Court has made clear that the government has the burden of calling witnesses and allowing the defendant to confront them through cross examination. Because the amending affidavit constituted a testimonial statement and the government failed to call the agents to testify, the admission of the affidavit into evidence was error.
2. Plain Error
We next determine whether the error was plain. Macias relies on this Court’s decision in Bustamante, 687 F.3d at 1190. In that case, the issue before this Court was also whether the criminal defendant had been born in the United States. The government introduced a typewritten document that was labeled as a “copy” of Bustamante’s Philippine birth certificate. Id. at 1192. The document had been obtained by the government during its previous investigation into whether Bustamante was a United States citizen. Id. The document was neither a photocopy nor a dupli *1019 cate. Id. It provided: “This is to certify that according to the record of births in this office, the following is the copy of the birth certificate of: Napoleon Busta-mante.” Id. The document then transcribed information from the office’s birth records, stating that Bustamante was born in the City of Bacolod on February 1,1939. Id. The document also provided that it was issued in 1975, and was signed by a civil registrar. Id.
Bustamante objected, arguing that it was inadmissible under Crawford. Id. at 1193. The district court disagreed and admitted the document. Id. This Court concluded that the document was a testimonial statement. Id. at 1194. Although labeled as a copy, it was an “affidavit testifying to the contents of the birth records ... and is functionally identical to [the] live, in-court testimony that an employee of the Civil Registrar’s office might have provided.” Id. (citation and internal quotation marks omitted). Moreover, the document was created for the investigation into Bustamante’s citizenship and “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Id. This Court made clear that its holding did not impugn the “general proposition that birth certificates, and official duplicates of them, are ordinary public records ‘created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial.’ ” Id. (quoting Melendez-Diaz, 557 U.S. at 324, 129 S.Ct. 2527). In contrast, the document at issue did not merely authenticate an “existing non-testimonial record;” instead, a new record was created for the purpose of generating evidence against Bustamante. Id. Accordingly, the admission of the document without allowing an opportunity for cross examination violated the Sixth Amendment’s Confrontation Clause. Id.
Likewise, in the instant case, the amending affidavit essentially testified regarding the results of the border patrol agents’ investigation regarding the place of Macias’s birth. The amending affidavit was created during an investigation of Macias’s citizenship and with the intent to use it at Macias’s second trial. The amending affidavit was created “for the purpose of providing evidence against” Macias. Id. Following this Court’s opinion in Bustamante, we are convinced that the admission of the amending affidavit was clear or obvious error. Thus, the admission constitutes plain error.[4]
3. Substantial Rights
 The next question is whether the admission of the amending affidavit affected Macias’s substantial rights. Ordinarily, an error has affected an appellant’s substantial rights when the error “affected the outcome of the district court proceedings.” United States v. Lopez, 762 F.3d 852, 863 (9th Cir.2014). Ultimately, we conclude that the admission of the affidavit did not affect the outcome of the proceedings in light of (1) Agent Kahl’s testimony at trial explaining the agents’ investigation that culminated in their execution of the amending affidavit and (2) the overwhelming evidence that Macias was born in Mexico.
As previously explained, because the amending affidavit was testimonial, Macias had the right to confront the affiants, Border Patrol Agents Kahl and Desrosiers. The district court admitted the affidavit *1020 attached to the delayed registration of birth during the government’s case-in-chief prior to Macias having the opportunity to confront either witness. However, during the presentation of his defense, Macias called Agent Kahl and questioned him regarding his role in executing the amending affidavit. Thus, Macias was able to belatedly confront Agent Kahl. Indeed, when the prosecutor objected to Macias’s questioning as leading, defense counsel responded that he was “calling an opponent party witness. It’s an adverse witness. I’m permitted to cross.” The district court overruled the objection as to leading and allowed Macias to ask the leading question. Thus, Macias was allowed to cross examine Agent Kahl in front of the jury.
Although Macias was able to confront Agent Kahl, Agent Desrosiers did not testify. However, there is no indication that Agent Desrosiers’s testimony would be anything but cumulative of Agent Kahl’s testimony. Agent Kahl testified that the prosecutor requested assistance in investigating Macias’s citizenship and nationality. Agents Kahl and Desrosiers together went to the home of Macias’s parents and interviewed the family. Both agents reviewed documents from the family’s immigrations files. Additionally, Agent Kahl testified that the State Department investigators located Macias’s Mexican birth certificate. Based on the agents’ interviews with Macias’s family, their review of the documents ih the family’s immigration files and Macias’s Mexican birth certificate, the agents concluded that Macias was born in Mexico. Agent Kahl then executed the affidavit amending Macias’s delayed registration of birth. The amending affidavit provides that Macias was born in Mexico and not in Riverside, California. The affidavit further states as follows: “Mexican birth certificate has been obtained by U.S. Government.. Father Felipe Guzman Macias confirms son born in Mexico. Father[’s] and Mother’s alien registration files show Johnny Chaboya Macias [was] born in Mexico.” As such, the amending affidavit itself provides the source of the information that the agents relied upon in coming to their conclusion that Macias was born in Mexico.[5] Significantly, Macias’s father testified at trial that Macias was born in Mexico, and the documentary evidence cited by the agents in the affidavit was before the jury. As such, the jury had before it admissible evidence explaining the agents’ stated reasons for executing the amending affidavit.
In determining whether the failure to confront Agent Desrosier and the belated confrontation of Agent Kahl affected the outcome of Macias’s trial, it is important to keep in mind what was actually contested at trial. Although Macias objected to the admission of the Mexican birth certificate as “not certified,” Macias did not dispute that his father had obtained the birth certificate. Indeed, Macias called an immigration lawyer to testify that it was common for Mexican parents to register their children in Mexico even if the child had been born in the United States. The immigration lawyer explained that parents would register the child in Mexico so that the child could obtain an education and other benefits that are given to Mexican citizens. During closing argument, defense counsel stated that it is “very common” for a child to be “born in the United States but to be registered in Mexico, because a baby unregistered in Mexico can’t be vaccinated, can’t go to school, can’t get *1021 healthcare and can’t enjoy the legal and social benefits without that registration.” Accordingly, Macias did not actually dispute the fact that Macias’s father obtained the Mexican birth certificate.
Additionally, in his brief, Macias admits that his parents listed his birthplace as Mexico on their applications for lawful permanent residency. Macias also admits that he has been “deported on numerous occasions beginning in 1981” and that he claimed to be a citizen of Mexico during some of those deportation proceedings.
Attempting to show harm, Macias argues that the principal difference between the first trial and the second trial is the introduction of the amending affidavit. Macias is correct that the amending affidavit was only admitted at the retrial. Likewise, the Mexican birth certificate was only admitted at the retrial, and Macias fails to recognize the importance of that document. The importance of the Mexican birth certificate is magnified when, at trial, the defense essentially admitted that his father registered him when he was barely a week old in Yureeuaro, which is over 1,500 miles from Riverside, California.[6] The importance of the Mexican birth certificate is further magnified by the testimony of the custodian of the delayed registration of birth. The custodian testified that if her office had been provided with either Macias’s Mexican birth certificate or his deportation orders, it would not have issued him a delayed registration of birth. Macias does not dispute the validity of the Mexican birth certificate or the deportation orders. Thus, the custodian’s testimony that these documents would have pre-eluded the issuance of Macias’s delayed registration of birth essentially eviscerates his defense.
To summarize, the following evidence admitted at trial convinces us that the Confrontation Clause violation did not affect the outcome of the trial and thus did not affect Macias’s substantial rights. Macias’s father testified that he was present at Macias’s birth in Mexico. His father also confirmed the authenticity of the Mexican birth certificate, which was obtained when Macias was one week old. Macias admitted that he was a citizen of Mexico in deportation proceedings that occurred both before and after he obtained the delayed registration of birth. With respect to Macias’s delayed registration of birth document, neither affiant testified. Moreover, Macias’s mother’s application for residency provided that Macias was born in Mexico, which conflicts with the birthplace listed in the delayed registration of birth document. With respect to the amending affidavit, as set forth above, Macias was able to cross examine one of the agents as to the agents’ joint investigation and the evidence they relied upon to execute the amending affidavit. Under those circumstances, we are convinced that the error did not affect the outcome of the trial. Macias has not shown that his substantial rights were affected.[7]
B. Evidentiary Challenges to Amending Affidavit
Macias raises four more arguments challenging the admission of the same amending affidavit discussed above. More specifically, Macias contends that the *1022 amending affidavit should have been excluded because: (1) it constituted inadmissible hearsay; (2) its probative value was substantially outweighed by a danger of unfair prejudice; (3) its affiants lacked personal knowledge; and (4) it was an improper attempt to have one witness testify as to another witness’s credibility. Unlike Macias’s Confrontation Clause argument, these four evidentiary objections are preserved for appeal.
Where there has been a noncon-stitutional error, we must reverse “unless there is a ‘fair assurance’ of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict.” United States v. Morales, 108 F.3d 1031, 1040 (9th Cir.1997) (en banc) (quoting United States v. Crosby, 75 F.3d 1343, 1349 (9th Cir.1996)). In the preceding discussion at II. A.3, supra, we concluded that the admission of the affidavit did not affect the outcome of the proceedings. We recognize that the preceding discussion involved a different assignment of the burden of proof with respect to whether the verdict was affected. In the preceding discussion, under the plain error standard, Macias had the burden of showing that the verdict was affected. For these four preserved evi-dentiary challenges, the government has the burden of showing that the verdict was not affected by the affidavit. We conclude that based on the same evidence and reasons set forth in our discussion in II.A.3, supra, the government has shouldered its burden of demonstrating that it, is more probable than not that the error did not materially affect the verdict. Because we conclude that the admission of this affidavit is harmless error, we need not address the merits of these evidentiary objections. See United States v. Bishop, 1 F.3d 910, 911 (9th Cir.1993) (explaining that the Court need not reach the merits of the claim that the evidence was inadmissible because any error was harmless).
C. Prosecutorial Misconduct
Macias contends that the prosecutor drew an improper inference in closing argument by claiming that Macias’s delayed birth registration was a “forgery.” Macias recognizes that because defense counsel failed to object to the argument, the claim is reviewed for plain error. To show plain error, Macias must demonstrate that: (1) there was error; (2) the error was plain; and (3) the error affected substantial rights. United States v. Geston, 299 F.3d 1130, 1134-35 (9th Cir.2002); Olano, 507 U.S. at 730-32, 113 S.Ct. 1770. “Under this standard, a conviction can be reversed only if, viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction would result in a miscarriage of justice.” Geston, 299 F.3d at 1135 (internal quotation marks and citation omitted).
Referring to the delayed birth registration during closing argument, the prosecutor called the document a “complete fabrication.” He further asserted that “[i]t wasn’t the mom who signed it. This is a forgery in and of itself.” He further argued that Macias’s mother would have signed it “Maria Chaboya” as opposed to “Maria Macias.” He then stated that “[w]hat probably happened here — and I wasn’t there. None of us were there. What probably happened is the Defendant decided he’s going to fill this form out and he puts a signature down there.”
In response to the prosecutor’s forgery accusation, defense counsel explained during closing argument that Macias’s mother’s full name was “Maria Chaboya de Macias” and invited the jury to compare Maria’s signature on the delayed registration of birth with her signature on the application for lawful permanent residency. Defense counsel argued that the name *1023 “ ‘Maria’ looks exactly the same in both of the applications.”
“Prosecutors have considerable leeway to strike hard blows based on the evidence and all reasonable inferences from the evidence.” United States v. Sullivan, 522 F.3d 967, 982 (9th Cir.2008) (citation and internal quotation marks omitted); cf. United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993) (explaining that prosecutors may argue in closing argument that one side is lying if the argument is based on reasonable inferences).
The principal issue in this case is whether Macias was born in the United States. The theory of the government’s case was that the delayed registration of birth was obtained by fraud. During closing argument, the prosecutor relied heavily on the Mexican birth certifícate, arguing that the certificate “in and of itself is conclusive” as to Macias’s place of birth. The prosecutor also emphasized that the only trial witness who was present at Macias’s birth was Felipe, who testified that it took place in Mexico. Additionally, Macias’s older brother Gil testified that Macias was born in Mexico. The prosecutor then pointed out that during a previous deportation proceeding Macias had claimed that a family friend told him he was born in Riverside, California. However, during the instant deportation proceedings, Macias changed his story by claiming that it was his mother who told him that he was born in Riverside. Further, although Macias claimed to have learned of his true birthplace when he was 18 years old, he did not obtain the delayed birth registration until approximately 20 years later— after several deportations. Additionally, Macias made numerous sworn statements during immigration proceedings that he was born in Mexico and was a Mexican national.
The prosecutor attacked the validity of the delayed registration of birth by stating that Maria could neither read nor write.[8] He also pointed out that the State of California does not verify signatures on the delayed registrations of birth.
The evidence before the jury made it abundantly clear that the issue was whether Macias was born in the United States and that the prosecutor’s position was that the Mexican birth- certificate was genuine. The evidence demonstrated that it was Macias who obtained the delayed birth registration. Thus, the inference that can be drawn from the evidence is that Macias' falsely procured the delayed birth registration.
Although there is no direct evidence that it was actually Macias who signed his mother’s name on the delayed registration of birth, there is strong evidence demonstrating that Macias was born in Mexico, including the Mexican birth certificate, the immigration files, and Macias’s father’s and brother’s testimonies. We conclude that' the argument that the document is a fabrication is a reasonable inference from the evidence. Sullivan, 522 F.3d at 982. Accordingly, the prosecutor’s remarks during his closing argument do not constitute error, much less plain error.
D. Cumulative Error
Finally, Macias contends that the combined effect of the above-discussed alleged errors rendered his trial fundamentally unfair. “In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors *1024 may still prejudice a defendant.” United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir.1996). If the “government’s case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors.” Id.
As set forth previously, we hold that the admission of the amending affidavit did violate the Confrontation Clause, but that it did not constitute plain error that affected Macias’s substantial rights. With respect to the nonconstitutional challenges to the amending affidavit, we explained above that any error is harmless. Although Macias challenges the admission of the amending affidavit on numerous grounds, it is an admission of a single document. Further, the prosecutor’s remarks did not constitute an error. Macias has failed to show the multiple errors necessary to prevail on a claim of cumulative error.
III. CONCLUSION
For the above reasons, the district court’s judgment is AFFIRMED.

. The record shows that the government had the fingerprints on this birth certificate tested but the results were inconclusive.

. Although Macias raised a Confrontation Clause argument with respect to documents contained in the immigration files, he did not raise this argument in his challenge to the amending affidavit. We note that the government, in response to Macias’s Confrontation Clause argument as to the immigration documents, asserted that if Macias was permitted to introduce the delayed registration of birth without the testimony of the affiants (his mother and Guerrero), then the government should be allowed to introduce the immigration documents. The district court interpreted the government’s argument to be that if the Confrontation Clause did not preclude the admission of the delayed registration of birth, then it should not preclude the immigration documents. However, we do not believe that the district court interpreted the government’s argument as actually raising a Confrontation Clause violation with respect to the amending affidavit. Cf. United States v. Anekwu, 695 F.3d 967, 973 (9th Cir.2012) (explaining that a brief statement by the prosecutor that the admission of records does not violate the Confrontation Clause "does not substitute for a timely and specific Confrontation Clause objection” from the defendant). Moreover, the record makes clear that the only Confrontation Clause objection was to the mother's immigration files because the parties were initially disputing whether Macias’s mother was unavailable to testify and not whether the border patrol agents were unavailable to testify. Macias does not challenge the admission of the documents in the immigration file on appeal.

. Our dissenting colleague suggests that we must address the Confrontation Clause claim on the merits because the government has waived any waiver argument it may have had by failing to assert it. The “waiver of waiver” doctrine is, however — like waiver generally— a discretionary doctrine. See Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1322 (9th Cir.2012) ("[T]he rule of waiver is a discretionary one.”) (citation and internal quotation marks omitted). Which standard of review to apply is a pure issue of law, id., and, exercising our discretion, we apply the plain error standard of review notwithstanding the government's failure to argue that it should apply.

. We recognize that the instant trial took place prior to the issuance of the Bustamante opinion. Nonetheless, the Supreme Court has held that an error is plain if it is contrary to the law at the time of appeal. Henderson v. United States, -U.S. -, 133 S.Ct. 1121, 1130-31, 185 L.Ed.2d 85 (2013).

. Both agents signed the affidavit stating that they certified under penalty of perjury that they had personal knowledge of the facts in the affidavit. Agent Kahl testified that although he was not present at Macias's birth, he conducted an investigation and believed that he did “have personal knowledge as to [Macias’s] place of birth.”

. We may take judicial notice of the distance between the two locations. See Cervantes v. United States, 263 F.2d 800, 804 n. 5 (9th Cir.1959) (noting that “we take judicial notice of the fact that San Clemente is more than seventy miles from the nearest port of entry from Mexico”).

. Because the error did not affect Macias’s substantial rights, we need not reach the fourth prong of the plain error test, which is whether the "error seriously affects the fairness, integrity or public reputation of judicial proceedings.” Anekwu, 695 F.3d at 973.

. Felipe had testified that Maria could neither read nor write. Likewise, during his post-arrest interview, Macias stated under oath that his mother “didn’t know how to read or write.”