NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CRISTIAN LEYVA, *Appellant*.

No. 1 CA-CR 19-0672
FILED 12-17-2020

Appeal from the Superior Court in Maricopa County
No. CR2019-001897-001
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Michael J. Dew Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

**C R U Z**, Judge:

¶1 Cristian Leyva appeals his conviction and sentence for one count of misconduct involving weapons, a Class 4 felony. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 In February 2019, law enforcement conducted a traffic stop on a vehicle in which Leyva was the passenger. The officer asked the driver of the vehicle, as well as Leyva, if there were any weapons in the vehicle. Leyva and the driver both responded, "no." Two other officers responded to the scene as backup, and while asking for Leyva's I.D., a second officer asked Leyva if there were any weapons in the car, to which Leyva again responded "no." The officer asked Leyva to step out of the vehicle, and Leyva complied. The officer then saw a firearm underneath the passenger seat where Leyva had been sitting.

¶3 Leyva was placed in handcuffs by the third officer, and the officer informed him, "You're just being detained right now, okay?" The third officer then asked Leyva, "Did that officer ask you if there was a gun in the car?" Leyva responded, "yes," and the officer stated, "C'mon, man." The officer then asked Leyva, "Is there anything else in the car that you're aware of, man? Now is your time to be straight up and forward." Leyva told the officer, "It's just that gun. Some guy just got in the car and left it right now." The officer followed up, asking, "So your prints won't come back on that gun or anything like that?" And Leyva stated, "Yeah, I touched it." The officer asked, "Do you know if the gun's stolen?" Leyva responded, "I don't know." The officer then placed Leyva in the back of the patrol car. The driver of the vehicle was placed in the back of a different patrol car. Officers removed the gun from the vehicle and observed its serial number was defaced.

¶4 Leyva and the driver of the vehicle were read *Miranda* warnings and questioned separately. The driver denied knowing there had

been a gun in the vehicle. Leyva initially told police he had no knowledge of the gun and he was unaware that the gun had been under his seat. Leyva told the officers two females had been in the backseat of the vehicle shortly before being pulled over, and he did not know if either female had a gun. However, the officer confronted Leyva with his earlier statement that his fingerprints would be on the gun, and Leyva then told police a man named "Chano" owned the gun. Leyva stated that Chano had been in the car and placed the gun under the passenger seat, although Leyva had touched the handle of the gun. Officers then asked the driver of the vehicle if Leyva's version of the events was true. The driver stated that he did not know a Chano, and the only people who had been in his vehicle were Leyva and the two females.

¶5        Officers then confronted Leyva with the driver's statements, which were inconsistent with Leyva's version of the events. At this point, Leyva admitted that Chano had never been in the vehicle, and Leyva confirmed the driver did not know about the gun's existence. Leyva stated that Chano had given him the gun earlier that day and asked him to "take care of it." Leyva stated he then took the gun from Chano and later placed it under the passenger seat. Leyva admitted he knew the gun had been under the passenger seat the entire time, and his fingerprints would be on the handle of the gun, but not the trigger or the rack. Leyva told the officer he was not legally permitted to possess a gun, and officers discovered he was a prior felon. Officers told Leyva they would submit charges against him later, and Leyva was released from the scene.

¶6        Leyva was charged with misconduct involving weapons and appointed counsel. Before trial, Leyva moved to proceed without counsel, and after finding he knowingly, intelligently, and voluntarily waived his right to counsel, the court granted Leyva's motion. The court appointed Leyva's former counsel as advisory counsel. On the second day of trial, Leyva filed a motion to suppress, arguing any statements made before the officers advised him of his *Miranda* rights should be precluded as unconstitutional and self-incriminating. The superior court ruled the voluntariness of Leyva's statements was a question of fact for the jury, although "[a] motion to suppress at this point is untimely."

¶7        Following the trial, the jury found Leyva guilty of the charge. During the aggravation phase of the trial, the State presented testimony that Leyva committed the offense while on pretrial release for a separate felony offense and felony probation for a separate felony conviction from 2016. The jury found aggravating circumstances of the commission of the offense

3

while on release and felony probation. The superior court sentenced Leyva to a prison term of twelve years.

¶8          Leyva timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and 13-4033(A)(1).

## DISCUSSION

¶9          Leyva argues the court erred in denying his motion to suppress. We review the denial of a motion to suppress for an abuse of discretion, and we view the facts in the light most favorable to upholding the superior court's ruling. *State v. Cornman*, 237 Ariz. 350, 354, ¶ 10 (App. 2015).

¶10         Leyva sought to suppress any statements he made before law enforcement read him his *Miranda* rights, arguing that any questioning that took place pre-*Miranda* "should be precluded as testimony against defendant." However, Leyva filed his motion to suppress after the trial had commenced, and the court denied the motion as untimely. Although the court heard argument of the parties, no evidentiary hearing was held.

¶11         Leyva argues that the State "waived waiver," citing *United States v. Macias*, 789 F.3d 1011 (9th Cir. 2015) and *Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010). However, these cases make clear that a party can waive waiver implicitly by failing to assert it, and "by addressing the claim on the merits without also making a waiver argument." *Norwood*, 591 F.3d at 1068; *see also Macias*, 789 F.3d at 1024-25 (Wardlaw, J., concurring in part, dissenting in part). Here, the State expressly claimed Leyva's motion was untimely before addressing the motion on its merits.

¶12         "Parties must make all motions no later than 20 days before trial," Ariz. R. Crim. P. 16.1(b), and "[t]he court may preclude any motion, defense, objection, or request not timely raised by motion." Ariz. R. Crim. P. 16.1(c). There is an exception to this rule, however, and the court cannot deny a motion based on untimeliness if "the basis was not then known and could not have been known through reasonable diligence, and the party raises it promptly after the basis is known." Ariz. R. Crim. P. 16.1(c).

¶13         Leyva argues the "[r]ecord in this case is silent" with respect to when Leyva learned of the basis for his motion to suppress. But the superior court asked the State about the timing of disclosure of the officer's body-worn camera footage to Leyva, and the State maintained it had timely disclosed the body-worn camera footage to Leyva. Leyva did not contend

below, and does not contend on appeal, that the body-worn camera footage was untimely disclosed or that the timing of disclosure of any other evidence prevented him from filing his motion to suppress in a timely fashion. The superior court did not abuse its discretion in denying Leyva's motion to suppress as untimely.

¶14 To review the denial of a motion to suppress for fundamental error, we must first determine there was, in fact, error committed and that such error, in light of the entire record, was prejudicial. *State v. Thomas*, 130 Ariz. 432, 436 (1981). Then, our review is limited to the record of the evidentiary hearing on the motion. *State v. Lietzau*, 248 Ariz. 576, 579, ¶ 8 (2020) ("[W]e consider only the evidence presented at the suppression hearing . . . ."); *State v. Rojo-Valenzuela*, 237 Ariz. 448, 452, ¶ 15 n.2 (2015) ("We reiterate that review of a ruling on a motion to suppress is limited to the evidence presented at the suppression hearing."); *State v. Moore*, 222 Ariz. 1, 7, ¶ 17 (2009) ("A trial court ruling on a motion to suppress is reviewed based solely on the evidence presented at the suppression hearing."). Due to the untimeliness of Leyva's motion, no evidentiary hearing was held in the instant matter. And although there is body camera footage from three officers involved in the stop, that recording is not continuous. Additionally, Leyva does not state with specificity which statements should have been suppressed. On this record we cannot determine with any reasonable degree of certainty what factual findings the court would have made had it enjoyed the benefit of an evidentiary hearing. We refuse to speculate in that regard. Leyva has waived the issue. We find no error.

## CONCLUSION

¶15 We affirm Leyva's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:    AA